**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re:<br><br>CHARLES ALLEN ARNOLD,<br>SSN: xxx-xx-2181<br>Debtor. | ) | Case No. 07-18751-SBB<br>Chapter 11 |
| In re:<br><br>QUANTIC RESEARCH SYSTEMS, INC.,<br>EIN: 84-1190147<br>Debtor. | ) | Case No. 07-18751-SBB<br>Chapter 11<br><br>**Jointly Administered Case No.: 07-18751-SBB** |
| CHARLES ALLEN ARNOLD, and<br>QUANTIC RESEARCH SYSTEMS, INC.,<br>Plaintiffs,<br><br>v.<br><br>PULSEWAVE, LLC,<br>JAMES P. YATES, and<br>WILLIAM WETMORE,<br>Defendants. | ) | Adv. Proc. No. ____________________ |

**COMPLAINT**

CHARLES ALLEN ARNOLD and QUANTIC RESEARCH SYSTEMS, INC., by and through their respective counsel, for their Complaint against PULSEWAVE, LLC, JAMES P. YATES, and WILLIAM WETMORE, state and allege as follows:

**JURISDICTION**

1. This Court has core jurisdiction over this action pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O). This Court also has jurisdiction over matters arising in or related to a case under Title 11, pursuant to 28 U.S.C. § 1334.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

3. Charles Allen Arnold ("Arnold") is a debtor in one of the underlying bankruptcy cases and is a resident of the State of Colorado.

4. Quantic Research Systems, Inc. ("Quantic") is a debtor in one of the underlying bankruptcy cases and does business in the State of Colorado.

5. PulseWave, LLC ("PulseWave") was a Colorado limited liability company with its principal office located at 7220 South Fraser Street, Centennial, Colorado.

6. James P. Yates ("Yates") is an individual residing in Charleston, Illinois who has personally conducted business in the State of Colorado.

7. William Wetmore ("Wetmore") is an individual who is believed to be residing in Tucson, Arizona. Mr. Wetmore acted as the manager of PulseWave and as the manager of PulseWave conducted business in the State of Colorado.

## GENERAL ALLEGATIONS

8. On August 9, 2007, Mr. Arnold filed his Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), Case Number 07-18751 SBB (the "Arnold Case").

9. On August 9,2007, Quantic filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code, Case Number 07-18784 SBB (the "Quantic Case").

10. On August 14, 2007, the Court entered an Order Granting Quantic's and Mr. Arnold's Joint Motion for Joint Administration.

11. Quantic and Mr. Arnold are each operating as Debtors-in-possession pursuant to 11 U.S.C. § 1107.

### Allegations Concerning Property of the Bankruptcy Estates

12. Mr. Arnold is the inventor of a new method of pulverizing materials into small particles, among other processes, known as resonance disintegration. Mr. Arnold also invented and developed a machine or mill for implementing the resonance disintegration technology (the "Arnold Mill").

13. Mr. Arnold's inventions and the Arnold Mill are the subject of numerous U.S. Patents, including, but not limited to, Patent Nos. 6,135,370 (the "'370 Patent"); 6,227,473 (the "'473 Patent"); 6,395,051; 6,405,948 (the "'948 Patent'"); 6,669,752;

6,726,133; 6,889,471; and, 6,991,189 (collectively the "Arnold Patents").

14. The Arnold Patents were filed with the U.S. Patent office from and after April of 1999.

15. Quantic is the current owner of the Arnold Patents.

16. As owner of the Arnold Patents, Quantic owns all rights to the Arnold Mill.

17. Pursuant to 11 U.S.C. §541, the Arnold Patents and the Arnold Mill are property of Quantic's bankruptcy estate.

18. Mr. Arnold is a principal of Quantic and owns approximately 75% of the outstanding stock of Quantic.

19. Mr. Arnold is entitled to receive income from Quantic as both a principal of the company and a consultant to the company.

20. Pursuant to 11 U.S.C. §541, Mr. Arnold's stock in Quantic is property of Mr. Arnold's bankruptcy estate.

**Allegations Concerning Pre-Petition Disputes over the Arnold Patents**

21. In 1997, Mr. Arnold and others formed C.A. Arnold & Associates, Inc. ("Associates"). Mr. Arnold is the largest shareholder and principal of Associates.

22. After the formation of Associates and filing of the Arnold Patents, Mr. Arnold assigned two of the Arnold Patents to Associates, namely the '370 Patent and the '473 Patent.

23. In 1998, Mr. Arnold and John Arnold ("JA") formed C.J. Aluminum, LLC ("C.J. Aluminum") to develop a business in aluminum recycling using the Arnold Mill. C.J. Aluminum later changed its name to Natural Resonance Disintegration, LLC ("NRD").

24. JA is Mr. Arnold's brother.

25. In 1999, Mr. Arnold, JA and William Hahn formed Nutrient Enhancement Technologies, LLC ("NET") to develop a business in kava root processing using the Arnold Mill and the technology of a patent application filed by Mr. Arnold and Mr. Hahn.

26. The management of NET is governed by its Operating Agreement which was made effective on or about August 24, 1999.

27. Under the terms of the Operating Agreement, within 90 days of the death of a member of NET, the remaining members must vote to continue NET as an entity. If no such vote is held, NET is automatically dissolved.

28. In 2000, NET changed its name to PulseWave, LLC.

29. Mr. Arnold, through Associates, granted a license to PulseWave for the use and development of the '370 Patent (the "370 License") in conjunction with the commercialization of Arnold Mill.

30. After the formation of C.J. Aluminum, NRD, NET and PulseWave, Mr. Arnold transferred his ownership and/or membership in such entities to Associates.

31. Mr. Arnold is a principal and majority shareholder of Associates and authorized as such to state that Associates consents to the relief requested herein by Mr. Arnold and Quantic.

32. From and after the formation of PulseWave and NRD, Mr. Arnold and JA operated the businesses, built several Arnold Mills for use in research and testing, demonstration to potential customers, processing of materials for customers and licensing for use by customers.

33. During the operation of PulseWave and NRD, Mr. Arnold devoted his efforts to technical matters and JA was responsible for the business matters.

34. As of 2002, despite the best efforts of Mr. Arnold and JA, the Arnold Mills had not yet reached a sustainable operation and did not produce substantial revenues.

35. In or around 2002, Mr. Yates represented to Mr. Arnold and others that Mr. Yates was a sophisticated businessman with the available resources to fund the operations of PulseWave.

36. In or around 2002, Mr. Yates represented to Mr. Arnold and others that, among other things, Mr. Yates could assist PulseWave to obtain customers for the Arnold Mill and develop PulseWave into a profitable business.

37. In 2003, NRD merged into PulseWave. Upon the merger of the two entities, NET's Operating Agreement governed the management of PulseWave going forward.

38. Pursuant to a Pulsewave Development and Investment Agreement (the "Development Agreement") dated January 8, 2003, Mr. Yates was entitled to invest in PulseWave. After the execution of the Development Agreement, Mr. Yates assumed full control over all of the affairs of PulseWave including all management

rights and control over all of the operations of the company.

39. Based upon the representations of Mr. Yates, Mr. Arnold consented to the Development Agreement and Mr. Yates' management of PulseWave.

40. As part of the Development Agreement, Mr. Arnold was required to be retained as a consultant for the technical matters in developing and producing the Arnold Mill for various customers.

41. From and after the Development Agreement, Mr. Yates exercised complete dominion and control over the affairs of PulseWave to the exclusion of Mr. Arnold and the other members.

42. Mr. Yates employed Mr. Wetmore to act as the Chief Executive Manager of PulseWave and to manage the affairs of PulseWave after the Development Agreement.

43. Mr. Yates represented to Mr. Arnold and others that he had made investments into PulseWave as required by the Development Agreement in order to obtain a percentage ownership of PulseWave.

44. Contrary to Mr. Yates' representations, Mr. Yates did not fulfill all of his obligations under the Development Agreement, including, but not limited to, making all of the required investments, properly funding the operations of PulseWave, developing a business plan for the company, acting in the best interest of PulseWave and not in his own best interest.

45. Upon information and belief, Mr. Yates and his agent, Mr. Wetmore, did not properly manage the business of PulseWave by, among other things, failing to acquire customers, failing to respond to offers to purchase Arnold Mills, failing to deliver an operating Arnold Mill to an existing customer of PulseWave, removing the some or all of the assets of PulseWave from the State of Colorado to the State of Illinois, and failing to develop and market the Arnold Mill.

46. Mr. Wetmore has refused to provide the members of PulseWave access to the books and records of PulseWave, including, but not limited to, all offers to purchase, lease, license or otherwise acquire the Arnold Mill.

47. After learning of the misrepresentations and actions of Mr. Yates, Mr. Arnold and the other members of PulseWave refused to authorize the issuance of any membership units to Mr. Yates.

48. Despite the express refusal of the members of PulseWave to issue membership units to Mr. Yates, Mr. Yates caused PulseWave to issue to him certain membership units

of PulseWave for approximately 25% ownership of PulseWave.

49. Without the express consent of the members of PulseWave and contrary to the Operating Agreement, Mr. Yates also caused PulseWave to grant a security interest in some of the Arnold Mills to JA and Claire Arnold (JA's spouse), which interest was subsequently filed in the public records.

50. Mr. Yates knowingly and intentionally failed to manage the operations of PulseWave in order to falsely acquire ownership of PulseWave, the Arnold Patents, and the Arnold Mill, for his own benefit to the detriment of PulseWave and its members.

51. Mr. Yates and his agents, including Mr. Wetmore acted in contravention to PulseWave's Operating Agreement, to the exclusion of the members of PulseWave, for Mr. Yates' benefit and to the detriment of PulseWave and its members.

52. A dispute then arose between Mr. Yates, Mr. Arnold and the members of PulseWave as to the management and operations of PulseWave under Mr. Yates' control.

53. Mr. Yates then barred Mr. Arnold from the business premises of PulseWave located at 7220 South Fraser Street, Centennial, Colorado (the "Premises"), by, among other things, changing the locks and refusing entry, even though Mr. Arnold, Associates and other businesses of Mr. Arnold were located at the Premises.

54. Thereafter, Mr. Yates, his agents, including Mr. Wetmore, and PulseWave ceased all meaningful efforts to commercialize, develop and market the Arnold Mill, the '370 Patent together with the 370 License.

55. During the time period of Mr. Yates' control of PulseWave, Mr. Hahn died.

56. No vote was held to continue PulseWave within 90 days of the death of Mr. Hahn.

57. Pursuant to the terms of PulseWave's Operating Agreement, PulseWave was automatically dissolved.

58. Despite the dissolution of PulseWave, Mr. Yates and his agent, Mr. Wetmore, continued to operate PulseWave to the exclusion of its members.

59. As a result of the dissolution of PulseWave, the members of PulseWave were entitled to obtain all of the books and records as well as an accounting of PulseWave's assets and liabilities.

60. Due to the actions of Mr. Yates and his agents, including Mr. Wetmore, PulseWave did not take reasonable steps to operate a business and commercialize the Arnold Mill. PulseWave became deadlocked because of the dispute of its members over Mr.

Yates and his agents' management of PulseWave.

61. Mr. Arnold and other members of PulseWave terminated the Development Agreement and Mr. Yates' association with PulseWave.

62. Mr. Arnold and other members of PulseWave revoked and/or rescinded any previously granted proxy issue to Mr. Yates to vote their membership interests in PulseWave.

63. Mr. Arnold, through Associates, terminated 370 License to PulseWave, prior to filing for bankruptcy.

64. Because of the dissolution of PulseWave and the dispute over Mr. Yates' management of PulseWave, the value of the Arnold Mill and the Arnold Patents, including the '370 Patent, the 370 License, increasingly deteriorated over time with their non-use and lack of development.

65. Mr. Arnold and other members of PulseWave determined that Mr. Yates' continued management and control of PulseWave and its assets, including the Arnold Mill and the '370 Patent, was detrimental to the value of the Arnold Mill, the Arnold Patents and their future use and development.

66. Mr. Arnold, either by himself or as member, manager or corporate officer of his related entities, including PulseWave, assigned and transferred all of PulseWave's intellectual property, including the Arnold Patents, to Quantic during the summer of 2005.

67. Mr. Arnold, either by himself or as member, manager or corporate officer of his related entities, including PulseWave, assigned and transferred all of PulseWave's intellectual property, including the Arnold Patents, to Quantic in order to protect and preserve the remaining value of such property and patents and their future use and development.

68. In or around 2005, at the direction of Mr. Yates, PulseWave initiated litigation against Mr. Arnold, Associates, Quantic and others in the District Court, Jefferson County, Colorado, Case Number 2005CV3946 (the "PulseWave Litigation"). In the PulseWave Litigation, PulseWave asserts, among other things, that the Arnold Mill, the '370 Patent and other intellectually property of PulseWave was wrongly transferred to Quantic. PulseWave further asserts an ownership interest in all of the Arnold Patents in the PulseWave Litigation.

69. Quantic and Associates have denied PulseWave's claims in the PulseWave Litigation and asserted counterclaims against PulseWave, Mr. Yates and Mr. Wetmore.

70. Mr. Arnold and Quantic scheduled PulseWave and Mr. Yates as disputed creditors as part of their bankruptcy filings.

71. Mr. Arnold and Quantic dispute any and all claims of PulseWave and/or Mr. Yates.

72. Quantic's business, and thus Mr. Arnold's income, is dependent upon the development, use, sale, license and/or lease of the Arnold Mill and Arnold Patents.

73. PulseWave, Mr. Yates and/or Mr. Wetmore are in possession of property belonging to Quantic, including, but not limited to, several Arnold Mills, associated parts for the Arnold Mill, engineering drawings for the Arnold Mill, documents relating to prospective purchasers, licensees and/or lessees of the Arnold Mill and/or Arnold Patents (the "Related Property").

74. Despite demand by Quantic and Mr. Arnold to turnover the Related Property, PulseWave and Mr. Yates have failed and refused to turnover the Related Property.

**Allegations Concerning Pre-Petition Attempted Takeover of Quantic and its Assets**

75. After acquiring ownership of the Arnold Patents, Quantic obtained a loan (the "Hendricks Loan") from Hendricks Holding Company, Inc. ("Hendricks"). The Hendricks Loan is secured by, among other things, the Arnold Patents and Mr. Arnold's ownership in Quantic and Associates.

76. Upon information and belief, Mr. Yates and/or PulseWave attempted to acquire the Hendricks Loan from Hendricks prior to the bankruptcy filings of Mr. Arnold and Quantic.

77. Upon information and belief, Mr. Yates and/or PulseWave attempted to acquire the Hendricks Loan from Hendricks in an effort to obtain Hendricks' security interest in the Arnold Patents and Mr. Arnold's ownership of Quantic and Associates.

78. Upon information and belief, Mr. Yates and/or PulseWave attempted to acquire the Hendricks Loan from Hendricks in order to foreclose upon Hendricks' security interest in the Arnold Patents and Mr. Arnold's ownership of Quantic and Associates and obtain ownership of the same.

79. Upon information and belief, Mr. Yates and/or PulseWave attempted to acquire the Hendricks Loan and Hendricks' security interest in the Arnold Patents and Mr. Arnold's ownership of Quantic and Associates in an effort to permanently deprive Quantic and Mr. Arnold of rightful ownership to the Arnold Mill and Arnold Patents.

80. Mr. Arnold had and has business relations with other persons and/or entities with respect to the Arnold Mill, the Arnold Patents, the development, marketing and

commercialization of the Arnold Mill, and products produced by the Arnold Mill.

81. PulseWave, Mr. Yates and/or Mr. Wetmore have interfered with the business relations of Mr. Arnold causing Mr. Arnold to lose its business relations with the other persons and/or entities.

82. Quantic had and has business relations with other persons and/or entities with respect to the Arnold Mill, the Arnold Patents, the development, marketing and commercialization of the Arnold Mill, and products produced by the Arnold Mill.

83. PulseWave, Mr. Yates and/or Mr. Wetmore have interfered with the business relations of Quantic causing Quantic to lose its business relations with the other persons and/or entities.

**<u>Allegations Concerning Mr. Yates' False Patent Filing</u>**

84. Mr. Arnold and Mr. Hahn also invented certain technology relating to the extraction of organic materials from mineral matrices which invention is known as Benefication of Hydrocarbonons From Mineral Matrices (the "Arnold-Hahn Invention"). One use of the Arnold-Hahn Invention is extracting oil from oil shale using the Arnold Mill.

85. The Arnold-Hahn Invention is property of Mr. Arnold's bankruptcy estate pursuant to 11 U.S.C. §541.

86. Upon information and belief, Mr. Yates, through a representative or agent, and/or PulseWave, at the direction of Mr. Yates, filed a provisional application for a patent of the Arnold-Hahn Invention with the U.S. Patent Office on or about April 11, 2005 (the "Application").

87. The Application was given the application number 60/670556 by the U.S. Patent Office.

88. In the Application, Mr. Yates was listed as an inventor of the Arnold-Hahn Invention.

89. Mr. Yates did not participate in the inventing process of the Arnold-Hahn Invention.

90. PulseWave did not participate in the inventing process of the Arnold-Hahn Invention.

91. Mr. Yates is not a scientifically sophisticated person with respect to the Arnold-Hahn Invention.

92. Mr. Yates falsely represented himself as an inventor in the Application and/or caused

such false representation to be made in the Application.

93. Upon information and belief, Mr. Yates has other business interests in the oil extraction field.

94. Upon information and belief, Mr. Yates represented himself as an inventor of the Arnold-Hahn Invention in the Application and/or caused such representation to be made in the Application in order to acquire ownership rights over the Arnold-Hahn Invention.

95. Upon information and belief, PulseWave, at Mr. Yates's direction and control, caused the representation of Mr. Yates as an Inventor of the Arnold-Hahn Invention to be made in the Application in order to acquire ownership rights over the Arnold-Hahn Invention.

96. Upon information and belief, Mr. Yates represented himself as an inventor of the Arnold-Hahn Invention in the Application in order to acquire a financial benefit from the Arnold-Hahn Invention.

97. Upon information and belief, Mr. Yates represented himself as an inventor of the Arnold-Hahn Invention in the Application in order to acquire a financial benefit from the Arnold-Hahn Invention to the exclusion of Mr. Arnold.

98. Upon information and belief, Mr. Yates perpetrated a fraud upon Mr. Arnold by misrepresenting Mr. Yates as an inventor of the Arnold-Hahn Invention in the Application and/or causing such representation to be made in the Application in order to obtain a financial benefit.

99. Mr. Yates continues to perpetrate a fraud upon Mr. Arnold, by misrepresenting himself as an Inventor of the Arnold-Hahn Invention, in order to obtain a financial benefit.

100. Mr. Yates continues to attempt to transfer property of Mr. Arnold's estate, specifically the Arnold-Hahn Invention, to himself via the Application.

101. Mr. Yates alleged interest in the Arnold-Hahn Invention was not perfected on the date Mr. Arnold filed for bankruptcy as the U.S. Patent and Trademark Office has not yet issued a patent for the Arnold-Hahn Invention.

102. Mr. Yates continued attempt to transfer property of Mr. Arnold's estate, the Arnold-Hahn Invention, via the Application is a violation of 11 U.S.C. §362(a).

## FIRST CLAIM FOR RELIEF

(Declaratory Judgment)

103. Mr. Arnold and Quantic incorporate by this reference the allegations set forth in paragraphs 1 through 102 as though more fully set forth in this Claim for Relief.

104. Mr. Arnold and Quantic's rights, status and legal relations, among other things, with respect to the Arnold Mill, the Arnold Patents, the Arnold-Hahn Invention and the Application are affected by the actions of PulseWave and Mr. Yates.

105. There exists between the parties an actual controversy as to the rights and interests of the parties in and to the Arnold Mill, the Arnold Patents, the Arnold-Hahn Invention and the Application as more fully alleged above.

106. There is a dispute as to the nature, extent, and validity of PulseWave's claim of ownership in and to the Arnold Mill, Arnold Patents, the Arnold-Hahn Invention and the Application.

107. Pursuant to 28 U.S.C. §2201 and Fed.R.Bankr.P. 7001(9), Mr. Arnold and Quantic seek declaratory relief against PulseWave and Mr. Yates concerning the Arnold Mill and the Arnold Patents, declaring that such property is property of Quantic's bankruptcy estate to the exclusion of PulseWave and Mr. Yates.

108. Pursuant to 28 U.S.C. §2201 and Fed.R.Bankr.P. 7001(9), Mr. Arnold seeks declaratory relief against PulseWave and Mr. Yates concerning the Arnold-Hahn Invention and the Application, declaring that such property is property of Mr. Arnold's bankruptcy estate to the exclusion of PulseWave and Mr. Yates.

109. The issuance of a declaratory judgment will settle and afford relief from uncertainty and insecurity with regard to the rights and status of legal relations between Mr. Arnold's and Quantic's bankruptcy estates and PulseWave and Mr. Yates.

WHEREFORE, Mr. Arnold and Quantic respectfully request that this Court enter a declaratory judgment declaring the rights of all of the parties with respect to the ownership of and title to the Arnold Mill, the Arnold Patents, the Arnold-Hahn Invention and the Application for their costs and attorney's fees as provided by statute or agreement, and for such other and further relief as is deemed appropriate.

## SECOND CLAIM FOR RELIEF

(Turnover of Property of the Estate 11 U.S.C. §542)

110. Mr. Arnold and Quantic incorporate by this reference the allegations set forth in

paragraphs 1 through 109 as though more fully set forth in this Claim for Relief.

111. PulseWave, Mr. Yates and/or Mr. Wetmore are in possession and control of property belonging to Mr. Arnold's and Quantic's bankruptcy estates, specifically the Related Property, as well as the Arnold-Hahn Invention and the Application, which have value for the estates.

112. Pursuant to 11 U.S.C. §542, Mr. Arnold and Quantic are entitled to an order of the Court requiring PulseWave, Mr. Yates, and Mr. Wetmore to turnover all property belonging to the bankruptcy estates, including, but not limited to, the Related Property, as well as the Arnold-Hahn Invention and the Application.

WHEREFORE, Mr. Arnold and Quantic respectfully request that the Court enter judgment in their favor and against Defendants PulseWave, Mr. Yates and Mr. Wetmore for the turnover of property belonging to Mr. Arnold and Quantic, including, but not limited to, the Related Property, the Arnold-Hahn Invention and documents relating thereto, and the Application, pursuant to 11 U.S.C. §542, and for such other and further relief as the Court deems appropriate.

## THIRD CLAIM FOR RELIEF

(Accounting Pursuant to 11 U.S.C. §542)

113. Mr. Arnold and Quantic incorporate by this reference the allegations set forth in paragraphs 1 through 112 as though more fully set forth in this Claim for Relief.

114. PulseWave, Mr. Yates and Mr. Arnold are in possession and control of property belonging to the bankruptcy estates, specifically the Related Property, as well as the Arnold-Hahn Invention and the Application, which have value for the estates.

115. Upon information and belief, while PulseWave, Mr. Yates and Mr. Wetmore were possession of the property of Mr. Arnold's and Quantic's estates, PulseWave, Mr. Yates and Mr. Wetmore obtained income from the Related Property, received offers to sell, license, lease, transfer or otherwise convey such property to third parties, and, secreted such property to the exclusion of Mr. Arnold and Quantic.

116. Pursuant to 11 U.S.C. §542, Mr. Arnold and Quantic are entitled to an accounting of any and all of property of Mr. Arnold's and Quantic's estates, including, but not limited to, the Related Property, income from such property, offers to sell, license, lease, transfer or otherwise convey such property to third parties, and, identification of the location of such property and access thereto.

WHEREFORE, Mr. Arnold and Quantic respectfully request that the Court enter judgment in his favor and against PulseWave, Mr. Yates and Mr. Wetmore for an accounting of any and all

of the property of Mr. Arnold and/or Quantic including, but not limited to, the Related Property, income from such property, offers to sell, license, lease, transfer or otherwise convey such property to third parties, and, identification of the location of such property and access thereto, pursuant to 11 U.S.C. §542, and for such other and further relief as the Court deems appropriate.

**FOURTH CLAIM FOR RELIEF**
(Civil Theft)

117. Mr. Arnold and Quantic incorporate by this reference the allegations set forth in paragraphs 1 through 116 as though more fully set forth in this Claim for Relief.

118. Throughout the period from January 2003, and through the present, PulseWave, Mr. Yates and/or Mr. Wetmore have exercised a distinct, unauthorized act of dominion or ownership over property of Mr. Arnold and Quantic, including, but not limited to: the Related Property, the Arnold-Hahn Invention and the Application; and, income from such property.

119. Despite demand upon PulseWave, Mr. Yates and Mr. Wetmore to turn over the property of Mr. Arnold and Quantic, including, but not limited to: the Related Property, the Arnold Mill, the Arnold Patents, the Arnold-Hahn Invention and the Application; and, income from such property, PulseWave, Mr. Yates and/or Mr. Wetmore continue to retain such property to the detriment of the bankruptcy estates of Mr. Arnold and Quantic.

120. As a direct and proximate result of PulseWave's, Mr. Yates' and Mr. Wetmore's actions, Mr. Arnold's and Quantic's bankruptcy estate have been damaged in an amount to be proven at trial or hearing, together with their additional lost profits that they reasonably would have earned but did not because of PulseWave's, Mr. Yates' and Mr. Wetmore's actions, as alleged above and below.

121. Pursuant to 11 U.S.C. §541 and C.R.S. §18-4-405, Mr. Arnold and Quantic are entitled to an award of three times the amount of actual damages sustained by the their bankruptcy estates, costs of this action and reasonable attorneys' fees.

WHEREFORE, Mr. Arnold and Quantic respectfully request that this Court grant judgment in his favor and against PulseWave, Mr. Yates and Mr. Wetmore for the sums found to be due and owing as of the time of trial or hearing, an award of treble damages pursuant to 11 U.S.C. §541 and C.R.S. §18-4-405, together with Mr. Arnold's and Quantic's costs, interest, expert witness fees and reasonable attorneys' fees, and for such other and further relief as this Court deems appropriate.

**FIFTH CLAIM FOR RELIEF**
(Breach Fiduciary Duty)

122. Mr. Arnold and Quantic incorporate by this reference the allegations set forth in

paragraphs 1 through 121 as though more fully set forth in this Claim for Relief.

123. PulseWave, Mr. Yates and Mr. Wetmore held and controlled and currently hold and control certain assets of PulseWave, including, but not limited to, several Arnold Mills, documents relating to the Arnold Mills, documents relating to the Arnold Patents, to the exclusion of Mr. Arnold, the other members of PulseWave.

124. Mr. Arnold and other members of PulseWave relied upon PulseWave, Mr. Yates and Mr. Wetmore to act as agents of Mr. Arnold and the members of PulseWave with respect to the development, marketing, and commercialization of the Arnold Mill and the '370 Patent together with the 370 License.

125. PulseWave, Mr. Yates and Mr. Wetmore were, was, at all times, acting as a fiduciary of Mr. Arnold and the other members of PulseWave.

126. PulseWave, Mr. Yates, and Mr. Wetmore owed fiduciary obligations to Mr. Arnold to act in the best interest of Mr. Arnold and to not act in their own personal interest to the detriment of Mr. Arnold, the Arnold Mill, the '370 Patent together with the 370 License.

127. PulseWave, Mr. Yates and Mr. Wetmore breached their fiduciary duties owing to Mr. Arnold by, among other things, failing to develop and commercialize the Arnold Mill, the '370 Patent together with the 370 License.

128. As a direct and proximate cause of PulseWave's, Mr. Yates' and Mr. Wetmores' breaches of their fiduciary duties, Mr. Arnold has been damaged in an amount to be proven at trial or hearing, together with Mr. Arnold's additional lost profits it reasonably would have earned but did not because of PulseWave's, Mr. Yates' and Mr. Wetmore's breaches as alleged above and below.

129. PulseWave's, Mr. Yates and/or Mr. Wetmore's actions were attended by a willful, wanton and reckless disregard for the rights of Mr. Arnold. Mr. Arnold is entitled to an award of punitive or exemplary damages from PulseWave, Mr. Yates and/or Mr. Wetmore in order to ensure that they do not engage in such wrongful activity in the future.

WHEREFORE, Mr. Arnold respectfully requests that this Court enter judgment in his favor and against PulseWave, Mr. Yates and Mr. Wetmore, jointly and severally, for the sums found to be due and owing as of the time of trial, together with Mr. Arnold's costs, interest, attorneys' fees, and for such other and further relief as is deemed to be appropriate.

**SIXTH CLAIM FOR RELIEF**
(Tortious Interference)

130. Mr. Arnold and Quantic incorporate by this reference the allegations set forth in paragraphs 1 through 129 as though more fully set forth in this Claim for Relief.

131. Mr. Arnold and Quantic had and have business relations with individuals, subcontractors, other persons and/or entities with respect to the Arnold Mill, the Arnold Patents, the development, marketing and commercialization of the Arnold Mill and products produced by the Arnold Mill, including, but not limited to, contractual relations with Hendricks.

132. PulseWave, Mr. Yates and/or Mr. Wetmore knew of these business relations or had knowledge of other facts which reasonably should have caused them to know of Mr. Arnold's and Quantic's business relations.

133. With such knowledge, PulseWave, Mr. Yates and/or Mr. Wetmore, by words, conduct, or both, intentionally and improperly interfered with the business relations of Mr. Arnold and/or Quantic, thereby causing Mr. Arnold and/or Quantic to lose their business relations with the other persons and/or entities.

134. As a direct and proximate result of PulseWave's, Mr. Yates' and/or Mr. Wetmore's words, conduct, or both, Mr. Arnold and/or Quantic have been damaged in an amount to be proven at trial or hearing.

135. PulseWave's, Mr. Yates' and/or Mr. Wetmore's actions were attended by a willful, wanton and reckless disregard for the rights of Mr. Arnold and/or Quantic. Mr. Arnold and/or Quantic are entitled to an award of punitive or exemplary damages from PulseWave, Mr. Yates and/or Mr. Wetmore in order to ensure that they do not engage in such wrongful activity in the future.

WHEREFORE, Mr. Arnold and Quantic respectfully request that this Court enter judgment in their favor and against PulseWave, Mr. Yates and/or Mr. Wetmore, jointly and severally, for the sums found to be due and owing as of the time of trial, together with Mr. Arnold's and Quantic's costs, interest, attorneys' fees, and for such other and further relief as is deemed to be appropriate.

**SEVENTH CLAIM FOR RELIEF**
(Violation of 11 U.S.C. §362(a) & Damages under §362(k))

136. Mr. Arnold and Quantic incorporate by this reference the allegations set forth in paragraphs 1 through 135 as though more fully set forth in this Claim for Relief.

137. Mr. Yates has willfully violated 11 U.S.C. §362(a) by, among other things, maintaining the Application to obtain an interest in the Arnold-Hahn Invention.

138. Mr. Arnold has been injured by Mr. Yates' willful violation of 11 U.S.C. §362(a).

139. Mr. Yates' willful violation of 11 U.S.C. §362(a) has caused damages to Mr. Arnold in an amount to be proven at trial or hearing, including, but not limited to, costs and attorney's fees.

140. Mr. Yates' actions were attended by a willful, wanton and reckless disregard for the rights of Mr. Arnold. Mr. Arnold is entitled to an award of punitive damages from Mr. Yates in order to ensure that he does not engage in such wrongful activity in the future.

141. Pursuant to 11 U.S.C. §362(k), Mr. Arnold is entitled to recover his actual damages, including costs and attorney's fees, for Mr. Yates' willful violation of 11 U.S.C. §362(a), and in appropriate circumstances, punitive damages.

142. Mr. Yates' actions constitute civil contempt punishable by this Court. 11 U.S.C. §105(a); *In re Skinner*, 918 F.2d 444 (10th Cir. 1990).

WHEREFORE, Mr. Arnold respectfully requests that this Court enter judgment in his favor and against Mr. Yates for the sums found to be due and owing as of the time of trial, together with Mr. Arnold's costs, interest, attorneys' fees, as well as punitive damages, pursuant to 11 U.S.C. §362(k), and for such other and further relief as is deemed to be appropriate.

## EIGHTH CLAIM FOR RELIEF

(Postpetition Transactions - 11 U.S.C. §§ 549, 550 & 551 - Bromley Companies)

143. Mr. Arnold and Quantic incorporate by this reference the allegations set forth in paragraphs 1 through 142 as though more fully set forth in this Claim for Relief.

144. From and after commencement of Mr. Arnold's bankruptcy case, Mr. Yates has maintained his efforts to acquire an interest in the Arnold-Hahn Invention via the Application.

145. The transfer of Mr. Arnold's interest in the Arnold-Hahn Invention was not authorized under the Bankruptcy Code or by the Bankruptcy Court.

146. By reason of the foregoing, said transfer is voidable pursuant to 11 U.S.C. § 549(a).

147. Mr. Arnold may recover the asset wrongfully transferred pursuant to 11 U.S.C. §§

550 and 551.

WHEREFORE, Mr. Arnold respectfully requests that this Court enter judgment in his favor and against Mr. Yates, voiding the Application and any and all transfers of the Arnold-Hahn Invention to Mr. Yates and/or any other Defendant, pursuant to 11 U.S.C. § 549(a), for recovery of all such property transferred pursuant to 11 U.S.C. §§ 550 and 551, for costs and attorney's fees as provided by law, and for such other and further relief as the Court deems appropriate.

Dated this 14th day of September, 2007.

SENDER & WASSERMAN, P.C.

*/s/ Kenneth J. Buechler*

________________________________
Harvey Sender, Esq.
Kenneth J. Buechler, Esq.
1999 Broadway, Suite 2305
Denver, Colorado 80202
(303) 296-1999; (303) 296-7600 (fax)
buechler@sendwass.com
Attorneys for Quantic Research Systems, Inc.

WEINMAN & ASSOCIATES, P.C.

*/s/ Jeffrey A. Weinman*

________________________________
Jeffrey A. Weinman, Esq.
730 17th Street, Suite 240
Denver, CO 80202
303-572-1010/fax:303-572-1011
Attorneys for Charles A. Arnold